**CATAPHOTE CORPORATION, Plaintiff,**

v.

**Cecil W. HUDSON and Hudson Industries, Inc., Defendants.**

**Civ. A. No. 3723.**

United States District Court,
S. D. Mississippi,
Jackson Division.

Sept. 11, 1970.

---

L. Arnold Pyle, Jackson, Miss., for plaintiff, Cataphote Corp.

Robert W. King, Jackson, Miss., for defendants, Cecil W. Hudson and others.

### SUPPLEMENTAL OPINION

DAN M. RUSSELL, District Judge.

The above styled case was remanded to this Court by the Fifth Circuit Court of Appeals, 422 F.2d 1290, the opinion stating that "the trial court may have employed a partially incorrect standard in determining if the equipment, techniques and processes claimed to be trade secrets actually were trade secrets." The cause was remanded for "specific findings and conclusions, under correct standards, of whether Cataphote's claims are in fact trade secrets, and if they are of whether defendants are illegally appropriating them." This Court does not find it necessary to supplement the record with additional evidence, nor rehash in detail the entire history of the facts adduced from three hearings.

Following the initial hearing, the District Judge then presiding, found that defendant Hudson was engaged in the construction of a plant to make glass beads by means of a vertical up-draft furnace, a process he had learned, indeed materially contributed to, while employed in a confidential relationship with plaintiff, and that while he had not revealed this process to others, it was likely in the development of his own plant, later incorporated as Hudson Industries, Inc., and included herein as co-defendant, he would, in competition with plaintiff, make use of some knowledge and skill acquired while employed by plaintiff. Accordingly, that Court issued a temporary injunction restraining defendants from employing the use "of any plan, design, pattern, process or likeness or similarity of any feature or aspect of the vertical updraft furnace" used by

plaintiff during Hudson's employment by plaintiff which ceased in 1958. After a second hearing in which plaintiff sought to make the injunction permanent, and at a time when defendants had not yet completed their plant, the then presiding Judge issued his Findings of Fact and Conclusions of Law, which this Court later adopted as applicable at that stage of the proceedings. The presiding Judge found that it was undisputed that the manufacture of glass beads as such is not a protected art but is within the public domain, and that a vertical updraft furnace is in common use in such industry. Under the circumstances before him, the presiding Judge found that plaintiff would not be entitled to enjoin defendant from using his own native ability, basic skills and personal ingenuity and even experience with plaintiff in manufacturing glass beads out of cullet, together with such processes and skills as he may devise therefor which were not developed for plaintiff and put in use by defendant for plaintiff prior to March 1, 1958. The findings further showed that the parties had been secretive with the Court and with each other in divulging or not divulging the details of plaintiff's operation which merited protection, and whether these were to be employed by defendants in their operation. The Court directed that the temporary injunction be vacated but retained jurisdiction, in effect warning defendants that while they may safely engage in such business with the aid and assistance of knowledge within the public domain, they would not be permitted to use any process or procedure worked out at plaintiff's expense and known to defendant Hudson during his employment with plaintiff. Defendants were directed thirty days before this plant was put in operation to file with the Court and plaintiff a report revealing in detail the processes and procedures to be used by defendants in the manufacture of glass beads, together with detailed drawings. As pointed out by this Court it became obvious, as it had to the Judge theretofore presiding, that there could be no effective restraint against defendants until such time as the alleged trade secrets could be specifically identified and compared with the processes and procedures of defendants. Accordingly, prior to a third hearing, this Court denied an inspection of both plants by presumably disinterested experts, and directed that each side make a visual inspection of the other's plant, while in operation. From the court-afforded opportunity to inspect defendants' plant, plaintiff selected six phases of defendants' operation, from the time cullet is introduced into the furnace, until it emerges as the finished product in the form of spherical beads, describing the techniques and processes used therein in highly technical language, and alleging them as secret procedures misappropriated by defendants. Defendant Hudson, in turn, undertook to show as to each phase, that his equipment varied in design, measurements and content of metal, varying in turn the techniques used, all as spelled out in this Court's former opinion. It should be noted here, as previously stated, that Hudson's testimony reflected that during his employment with plaintiff, and in the construction of plaintiff's vertical furnace, he had the benefit of several patents, issued in connection with other vertical furnaces, which patents were furnished to him by plaintiff, and, as noted by the Appellate Court, photographs of a competitor plant which were in fact secretly taken by the president and manager of plaintiff corporation. With this combined knowledge he designed and built plaintiff's furnace, applying trial and error procedures before beads were successfully manufactured.

It seems obvious to this Court that each and every one of the processes outlined by plaintiff is an integral part of the successful production of beads, these processes being common and necessary to all vertical type furnaces, and known to the trade. The processes vary in the techniques applied according to the variances in design and dimensions of the stacks and appurtenances. The identical

technique applied to different furnaces neither would nor could produce the same result. Said differently, to achieve the same result, different techniques would be required where the furnaces differ. Both parties conceded that trial and error manipulations of the component parts of plaintiff's furnace were necessary before beads were satisfactorily produced, just as defendant Hudson claims he has had to use his native mechanical skills in manipulating the component parts of his furnace. The reference by this Court in its opinion to uniqueness or novelty was intended to show nothing more than, if techniques and skills developed on behalf of plaintiff adjusted to its plant, were so unique or novel as to subject them to protection, they would necessarily differ when applied to a plant of different dimensions and different component parts.

As stated under Sub. Topic B. Trade Secrets in "Developments—Competitive Torts," 77 Har.Law Rev. 888, 950: "Most of the difficult cases arise out of the employment relationship, often involving technically skilled employees who change jobs. * * * The courts have said that such employees may carry away their own 'faculties, skill, and experience,' but may not reveal 'confidential information secured solely through their employment'." Albeit Hudson's skills may not be considered highly technical, he obviously has native mechanical ingenuity. The Court confesses it could be in error in concluding that plaintiff has not shown that its claimed techniques, reduced to six, are such that warrant protection as trade secrets; however, in weighing the competing interests, the Court again comes to its same eventual conclusion. The Court considered the factors listed on page 18 of its decision [422 F.2d 1295]. Plaintiff claimed all in its favor. On the other hand, defendant, with his mechanical deftness, showed the ease with which a glass bead plant could be built and operated. In this he was supported by witnesses. On separation from plaintiff's employ, Hudson took no drawings, designs, plans, or any written matter with him. The knowledge he took with him was not acquired illegally, but through his employment and as a result of his own talents. He waited seven years before undertaking to be competitive. He was under no contract or written agreement not to compete, but solely under an implied legal obligation not to violate a confidential relationship. All of these facts and conclusions are set forth in the former opinion, and the Court has applied equitable doctrines. Although Water Services, Inc. v. Tesco Chemicals, Inc., 5 Cir., 410 F.2d 163, cited by the Appellate Court in its remand, involved a Georgia covenant not to compete, no such covenant being pled herein, Judge Wisdom said: "But since it may be difficult to determine, as a matter of law, what is a trade secret, the covenant not to compete is a pragmatic solution to the problem of protecting confidential information." This, plaintiff Cataphote, failed to provide for itself.

The record is lacking with respect to the trade area covered by these two plants except that they do have a national market rather than local. The Court conjectures that the market for glass beads may well determine for defendants whether their risk and expense have been worthwhile.

The Court re-affirms its former decision that relief be denied to plaintiff. Costs, if any, are assessed to plaintiff.

The Court sees no need for the impounding of this supplemental opinion as it contains no recitation of the claimed trade secrets.

An order may be submitted by defendants.