**CATAPHOTE CORPORATION,**
Plaintiff-Appellant,

v.

**Cecil W. HUDSON and Hudson Industries, Inc., Defendants-Appellees.**

**No. 30810.**

United States Court of Appeals,
Fifth Circuit.

July 1, 1971.

L. Arnold Pyle, Jackson, Miss., William A. Marshall, Chicago, Ill., for plaintiff-appellant; Merriam, Marshall, Shapiro & Klose, Chicago, Ill., Watkins, Pyle, Edwards, Ludlam, Winter & Stennis, Jackson, Miss., of counsel.

Robert W. King, Jackson, Miss., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The second sojourn of this trade secret litigation in this court questions whether the district court properly complied with the mandate which ended its first visit. Determining that the overall substance of the district judge's order comports with our previous opinion and that he did not abuse his discretion in denying injunctive relief, we affirm.

Plaintiff-appellant Cataphote Corporation, a manufacturer of microscopic glass beads, originally instituted the present case against Cecil W. Hudson and Hudson Industries, Incorporated, to enjoin them from using certain alleged trade secrets claimed to have been acquired by Hudson as a Cataphote em-

ployee.[1] While it is conceded that Hudson had substantial mechanical ability and skill in the manufacture of glass at the time he was first employed by Cataphote, he did not have experience with the production of glass beads. When Cataphote employed him it was engaging in trial and error efforts to devise a method to manufacture such beads with commercial success. Hudson was a trusted employee of Cataphote. During his employment, Hudson was instrumental in helping Cataphote perfect the production of glass beads by the vertical up-draft furnace method. This process is not a patent protected art, but rather employs principles which are in the public domain. After eight years as Cataphote's plant manager, Hudson left its employ and worked for seven years in unrelated industries. After this seven year period, Hudson, through Hudson Industries, Incorporated, started construction of a plant to manufacture glass beads in competition with Cataphote.

Cataphote sought injunctive relief, asserting that approximately 55 of its processes which it claimed to be trade secrets, were about to be improperly appropriated by Hudson and Hudson Industries. Hudson denied these charges. After an initial hearing, the plant was allowed to be constructed so the validity of charges could be examined in actuality rather than in theory. The plant was built and full details of its construction were supplied under court order to Cataphote. This process reduced the claimed violations to six. After a trial on the merits the district court, in an unreported opinion, held that Cataphote had failed to establish that its claimed trade secrets qualified as such. It also found that Hudson's equipment and techniques were not mechanical equivalents but were substantially dissimilar; and it ruled that Hudson should not be barred from using his plant as constructed and operated.

On appeal, a panel of this court was unable to decide whether in making its determinations the district court had used an improper standard. This doubt was based principally upon a statement by the district court that it had concluded that "plaintiff [Cataphote] has not convinced the court that its techniques and apparatus are in any way unique or novel. To qualify as trade secrets they must have elements of uniqueness as to amount to discovery." In support of this conclusion, the district court had cited a number of patent cases.

Our prior panel pointed out that "[T]he standards giving rise to protectability are different for patents than for trade secrets. And, while knowledge in the trade is an important area of inquiry, uniqueness in the patent law sense is not an essential element of a trade secret." In detailing the distinctions between trade secrets and patents, we noted that patent laws are designed to encourage invention and the arts while trade secret law is designed to protect against a breach of faith and reprehensible means of learning another's secrets. For this latter, limited protection, novelty *in the patent law sense of a substantial advance over prior art* is an improper standard.

Faced with the possibility that the district court may have improperly considered patent required uniqueness and novelty as a condition precedent to the classification of Cataphote's processes as trade secrets, the prior panel remanded the case so that the district court might make specific findings and conclusions under correct standards as to (1) whether Cataphote's claims were in fact trade secrets and (2) if they were, whether Hudson and Hudson Industries, Inc. illegally appropriated them.

1. The history and development of the instant litigation is sketched here with a broad brush. Greater detail may be obtained from the published reports of prior proceedings. 422 F.2d 1290 (5th Cir. 1970) and 316 F.Supp. 1122 (S.D. Miss.1970).

On remand the district court determined it did not need to hold additional hearings and explained that its prior findings were based upon the premise that the processes and techniques in dispute were common and necessary to all vertical type furnaces and known to the trade. It concluded that the six techniques which Cataphote now delineated as appropriated by Hudson in his new plant were not such as warranted protection as trade secrets, and additionally, after weighing the competing interests of both parties, the lower court came to the same ultimate conclusion—that Cataphote was not entitled to injunctive relief against Hudson's activities.

In contending that the district court failed to follow the previous panel's instructions on remand and incorrectly decided the cause, Cataphote argues (a) that the district court failed to make *new* findings on whether Cataphote possessed trade secrets, (b) that the district court applied improper standards of uniqueness and novelty and a weighing of competing interests in deciding that Cataphote did not possess trade secrets, and (c) that the district court erred in not extending trade secrets protection to it and enjoining Hudson's use of these secrets.[2]

At the outset, we did not undertake to lay down any precise legal parameters for determining trade secrets. We only condemned the use of an improper standard that *might* have been applied, and required the district court to be more specific in showing it had not employed this legal premise or correcting its error, if it had made one.

In one phase of its opinion on remand the lower court repeated the terms "unique and novel" which we had questioned. However, as we read the words

in their overall context, they do not show a disregard for our mandate but rather they undertake to explain that part of the district court's prior ruling as meaning that the claimed trade secret processes were simply too basic and commonly known to be protectable as trade secrets.

 While the previous panel's mandate declared that uniqueness and novelty were not correct standards to apply to the determination of what does or does not constitute a trade secret, it is clear that the panel spoke only of uniqueness and novelty in the patent sense of improvement over prior art. 2 Callman, Unfair Competition, Trademarks and Monopolies § 52.1 (3d ed., 1968) states:

> As distinguished from a patent, a trade secret need not be essentially new, novel or unique; therefore, prior art is a less effective defense in a trade secret case than it is in a patent infringement case. The idea need not be complicated; it may be intrinsically simple and nevertheless qualify as a secret, *unless it is in common knowledge and, therefore, within the public domain.* (Footnotes omitted. Emphasis added.)

Although a trade secret need not be so unique or novel as to be patentable, it must possess at least that modicum of originality which will separate it from everyday knowledge. In the words of our own prior opinion: "The subject matter of a trade secret must be secret. An item or process of public or general knowledge in an industry cannot be appropriated by one as his own secret." Where a process or idea is so common, well known or readily ascertainable that it lacks all novelty, uniqueness and originality, it necessarily lacks the element of

---

2. Cataphote also contended that it had been denied Fourteenth Amendment equal protection in the remand proceedings because the district court did not allow it to have experts examine Hudson's plant and testify, while a Cataphote employee had previously been allowed to compare the two plants as a witness for Hudson. This issue, insofar as it related to all previous hearings, was settled in our prior opinion. We explicitly left to the trial court's discretion whether it would supplement the remand record with additional evidence. It chose not to do so. The point on this appeal is wholly without merit.

privacy necessary to make it legally cognizable as a trade secret. In Smoley v. New Jersey Zinc Co., D.C., 24 F.Supp. 294, 300, (D.C.N.J.1938), aff'd. 106 F.2d 314, (3rd Cir. 1939), it was pointed out:

A further condition to recover [for appropriation of a trade secret] is that the idea disclosed must be novel. Flanigan v. Ditto, Inc., 7 Cir., 84 F.2d 490, 495. A duty not to use an idea already known cannot be created by virtue of the fact that one makes a confidential disclosure of that idea. Masland v. Du Pont de Nemours Powder Co., 3 Cir., 224 F. 689, 693, reversed on other grounds, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016. If the rule were not so restricted it is obvious that by disclosing an idea under delusions of confidence, the person making the disclosure thereafter could prevent the confidante from subsequently making use of it, even though the idea was well known prior to the date of the disclosure and open to the use of all others in the world.

Indeed, the courts have been quick to disallow any injunctive protection when the process or machine has been shown to be generally known to the trade. In Reynolds Metals Co. v. Skinner and Bradley, 166 F.2d 66 (6th Cir. 1948) the court even refused to enforce an express contract against reuse of plant processes —a factor not present in the instant case—when the process was generally known, since "[O]therwise the monopoly of the patent law would be extended with disastrous effect."

■■ We have also reviewed the trial court's action on remand in balancing the conflicting social and economic interests mentioned in the previous panel's decision[3] and find those determinations free of error. Such interests are particularly appropriate for consideration in trade secret cases where court protection is based on bad faith and reprehensible business practices. When Cataphote hired him, Hudson possessed many years of machine shop experience. For years he had been employed in the design, manufacture and maintenance of machinery for glass manufacture, including glass making furnaces which had given him experience with gas regulators and mixing valves. Hudson himself was at least in part responsible for the success of Cataphote's processes. He was never given any notice by them that the work on which his skills were being employed would be claimed to be protected. He took no prints, drawings or photographs when he left Cataphote's employ. He did not attempt to go into a competing business for seven years. Thus, under the tests we previously laid down, we cannot say that Hudson has employed any unfair means or breached any confidence in his present endeavor.[4] Rather, the proof and the trial court's findings therefrom disclose one who contributed significant general technical knowledge, skill and productive effort not only in the trial and error development of Cataphote's system, but later in the same manner of developing of a differing plant of his own.

■■ Trade secret processes are not passed upon officially, as are patented processes. Therefore, they are attended by no presumptions and the burden of

3. 422 F.2d at 1295 [headnote 12].

4. Given Mississippi's restrictive view that convenants not to compete "are in restraint of trade and individual freedom and are not favorites of the law," see e. g., Frierson v. Sheppard Building Supply Co., 247 Miss. 157, 154 So.2d 151 (Miss.1963); Texas Road Boring Co. of Louisiana v. Parker, 194 So.2d 885 (Miss.1967), a great doubt exists as to whether the law of Mississippi would have sustained the validity of such a covenant—even if one had been demanded

—which would have restrained Hudson from entering the business of manufacturing glass beads for a period longer than the seven-year period he worked in unrelated industries after leaving Cataphote. We do not have this issue in the case at bar. It is mentioned solely to reinforce the view that there were other considerations which could have influenced the district court in its conclusion that Cataphote had failed to demonstrate any improper or reprehensible conduct on the part of Hudson.

proof is on the plaintiff to prove not only that the idea used by the defendant is his but also that it involves some elements above ordinary mechanical commonality and is something not already known to the public and to the trade generally. Since we determine that there was no error in the action of the district court in its holding that these processes were not trade secrets, there was no need for that court to answer our second inquiry as to whether Hudson and Hudson Industries were illegally appropriating them.[5]

Having concluded that the district court did not fail to carry out our mandate and did not apply an erroneous standard in evaluating the evidence before him, our next function is not to reweigh that evidence, but to review the record with the object of determining whether the findings of the district court were clearly erroneous, i. e., whether we are left the firm impression that the findings are wrong. International Industries v. Warren Petroleum Corp., 248 F.2d 696 (3rd Cir. 1957). Employing this standard of review, we do not find that the district court's determination that the processes and techniques were too common to warrant trade secret protection is clearly erroneous.

We deem it both unnecessary and undesirable to spread on the public record the precise details of the processes involved because both parties consider that their procedures give them competitive advantages. It suffices to say that we have examined each of the six processes, designs and methods claimed to have been improperly utilized by Hudson. Every one of them involve matters of general scientific knowledge in the glass bead industry or matters of even more basic and widespread commonality. For example, the method of introducing glass cullet to Hudson's furnace bears greater similarity to Potter's patent cov-

ering such a vertical updraft furnace, which had entered the public domain, than to the alleged trade secret of Cataphote. Further, Cataphote's claim relating to a unique procedure for obtaining a particular furnace combustion condition reduces itself to a certain admixture of air and gas in the burner premix, coupled with added blown air. Both mixing and premixing air and natural gas to obtain varying combustion conditions involve principles so common that in form they are utilized on every household gas cook stove. Absent really unusual circumstances not present here, the right to compete by the use of such a generally known process could only be denied to an employee by a valid covenant not to compete, which Cataphote did not choose to exact as a condition of Hudson's employment.[6]

Cataphote, while conceding that these six claims involved principles which were generally known, proposed that it had developed refinements and combinations of known elements that entitled it to foreclose these refined processes to Hudson. These were, in each of the six instances, fact issues which were directed to the district court as the trier of the facts. With the benefit of the three hearings there held, it concluded that the processes used by Hudson were not Cataphote's secret refinements but rather were merely processes which were common and necessary to all vertical type furnaces and were known to the trade. The court bolstered its determination by pointing out that every different configuration of this type machinery had individual characteristics requiring varying adjustments and refinements to make glass beads rather than glass slag. It also determined that Hudson's machinery was different in several substantial respects and that peculiar refinements of common processes which were indigenous to Cataphote's plant would not work when applied to Hudson's machinery and, therefore, he could not be

---

5. This determination also makes it unnecessary for us to discuss whether the clean hands doctrine was applied.

6. See footnote 4, *supra.*

**1318**

appropriating their refinements. It finally found, again on the basis of credible evidence, that trial and error manipulations ingrained in Hudson's native abilities were the key to his success rather than any secret knowledge he gained from his Cataphote employment of seven years before. These findings are supported by an abundance of credible evidence. We cannot disturb them.

There was no error of law or abuse of discretion in the district court's denial of injunctive relief.

Affirmed.