**RAYBESTOS–MANHATTAN, INC.,**
Appellant,

v.

Leroy J. ROWLAND and Rowland Enterprises, Inc., Appellees.

**RAYBESTOS–MANHATTAN, INC.,**
Appellee,

v.

Leroy J. ROWLAND and Rowland Enterprises, Inc.

Nos. 71–1973, 71–2034.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 10, 1972.

Decided May 25, 1972.

Harold James, New York City (James & Franklin, New York City, and Charles H. Gibbs, and Sinkler, Gibbs, Simons & Guerard, Charleston, S. C., on brief), for Raybestos-Manhattan, Inc.

Coming B. Gibbs, Jr., Charleston, S. C. (Gibson, Gibbs & Krawcheck and Vernon R. Scott, Charleston, S. C., and T. Russell Foster, on brief), for Leroy J. Rowland and Rowland Enterprises, Inc.

Before RUSSELL and FIELD, Circuit Judges, and CHAPMAN, District Judge.

FIELD, Circuit Judge:

Charging the defendants with appropriation and exploitation of its secret apparatus and manufacturing method, the plaintiff Raybestos-Manhattan, Inc. instituted this action against Leroy J. Rowland and Rowland Enterprises, Inc. asking for injunctive relief against their further use or disclosure of the trade secret. The complaint further sought a declaratory judgment of ownership and an order directing the defendants to assign to the plaintiff any patent applications which might have been filed by them relative to the subject matter of the trade secret.[1] The defendants filed their answer denying the material allegations of the complaint, and in a counterclaim sought a declaration of their ownership of the trade secret and injunctive relief against the plaintiff.

The District Court entered an order denying the plaintiff any relief, and finding that Leroy Rowland was the owner of the secret method, subject only to shop rights of the plaintiff.[2]

The factual background incident to this controversy is not in dispute. For many years the plaintiff had manufactured and sold metal cored rolls involving the use of rubber and Teflon bonded to one another. The rolls had been manufactured by the plaintiff at its plant in Charleston, South Carolina, using a mold in accordance with a procedure or method disclosed in U.S. Patent 3380120 entitled "Manufacture of Metal Cored Rubber Rolls." Plaintiff's principal customer for these rolls was Xerox Corporation.

Leroy Rowland had been employed by the plaintiff continuously from the year 1960 in the unit which manufactured these rolls and in the course of his work became aware of certain production problems. Toward the end of the year 1967, Rowland conceived a new method which would facilitate the bonding of the Teflon to the rubber, and early in 1968 he submitted this proposed new method to the plaintiff through its established suggestion system. The suggestion was acknowledged by the appropriate plant committee and the plaintiff assigned Mr. Charles Tavelle to work with Rowland in an attempt to develop the new method to a point where it might be used successfully. Tavelle was a highly skilled machinist and designer with the competence to work on the project in certain technical areas in which Rowland was admittedly incapable. From January 1968, to March 1969, when Rowland's employment terminated, Tavelle, Rowland and other personnel of the plaintiff engaged in experimentation, testing and redesigning in an effort to produce a roll which would meet Xerox specifications. With Rowland's active participation, the en-

---

1. While they disputed their respective rights in the subject method, the parties conceded in the court below that it met the criteria to qualify as a trade secret.

2. Defendants filed a cross-appeal from that part of the District Court's order denying their claim for damages.

tire development program was carried on at considerable expense in the plaintiff's plant using its equipment and personnel.

In March of 1968, plaintiff's New York patent attorney conferred with Rowland and Tavelle at Charleston, South Carolina, relative to the possibility of preparing a patent application on the new method and apparatus. Both Rowland and Tavelle discussed with the patent attorney the status and details of the new method as well as the apparatus to be used therewith. Following this conference, however, the plaintiff decided to defer any patent application until the project could be further developed.

During this development period, as early as February of 1968, Rowland, without informing the plaintiff, approached a patent attorney to explore the possibility of obtaining a patent in his own name for this new method, and in February of 1969, while still employed by the plaintiff, and again without informing it, Rowland filed a patent application purporting to cover the new method. During this same period, Rowland contracted for a manufacturing plant, negotiated for the purchase of production equipment and arranged for the incorporation of the corporate defendant. Rowland also approached Xerox and offered to furnish rolls produced by the new method. The plaintiff had no knowledge of this conduct on the part of Rowland until about March 10, 1969, when information concerning his activities came to it through "feed-back" from Xerox. Rowland's employment with plaintiff terminated in March of 1969, and thereafter on April 7, 1969, the plaintiff's suggestion committee made a preliminary award to Rowland of $250.00 Rowland declined the committee's award and also refused to sign a patent application prepared by the plaintiff or to make any assignment thereof to it. After leaving the employment of the plaintiff Rowland approached a major competitor of the plaintiff and offered to enter into a licensing arrangement with respect to the new method of production.

As stated, Rowland disclosed his idea for a new bonding method to the plaintiff through its established suggestion system. This was a formal system which had been in effect at the Charleston plant for a number of years and was designed to encourage suggestions for improvements in manufacturing and operating procedures. All suggestions were considered by a committee which was authorized to pay cash awards for suggestions which it accepted. If a suggestion was not accepted a letter of rejection was sent to the suggestor within thirty days. A booklet outlining the details and operation of the system was given to each employee, and the computation of awards is explained in the booklet as follows:

"Where definite savings to the company can be determined the award is equal to 10% of measurable savings in one year from the date that your suggestion is put to use. In some cases it may take a trial period of six to twelve months before savings can be estimated. This may be followed by an additional award at the end of the trial period if the findings prove that the idea has paid off in even greater savings to the company."

The booklet further states: "All suggestions which receive an award become the property of the company including all patents and copyrights."

Rowland submitted his suggestion on an official form carrying the serial number A 85891 and was notified by the committee that it had been received. Upon the committee's decision that the suggestion had important potential, plaintiff's management assigned the personnel and made the arrangements for testing and commercial development of the suggested method. Progress reports were noted by the committee from time to time and Rowland was kept advised that the matter remained under consideration by the committee. In his testi-

mony in the District Court Rowland conceded that he worked with Tavelle on the project with the expectation that he would receive an award from the committee, and that at no time did he attempt to withdraw his suggestion. Rowland was thoroughly familiar with the plaintiff's suggestion system, having previously submitted a number of suggestions for which he had received several awards.

On these facts the District Court found that the suggestion booklet was merely an invitation for Rowland's offer in submitting his suggestion, and that he could not be bound thereby until the plaintiff accepted by making an award. Pursuing this line of reasoning the Court further found that Rowland's acts of appropriation and exploitation of the new method indicated his intention to revoke the offer and since such acts came to the attention of the plaintiff prior to the tender of the award in April of 1969, this act of acceptance on the part of the plaintiff was ineffective to create any contractural relationship between it and Rowland.

We do not agree with these findings of the trial Court. In our opinion the suggestion system of the plaintiff was in itself a continuing offer to all of its employees. In this respect it was analogous to a prize competition. See Carlini v. United States Rubber Co. (1969), 8 Mich.App. 501, 154 N.W.2d 595. Accordingly, when Rowland submitted his suggestion he accepted the offer of the plaintiff subject, of course, to all of the provisions of the suggestion system. The result was a valid and enforceable contract. Robertson v. United States, 343 U.S. 711, 72 S.Ct. 994, 96 L. Ed. 1237 (1952); Simmons v. United States, 308 F.2d 160 (4 Cir. 1962). Even if we should accept the District Court's premise that Rowland's suggestion constituted the offer, the subsequent conduct of the plaintiff, including consideration of the suggestion by the committee and the assignment of personnel and equipment to develop the project, was sufficient to demonstrate an acceptance of Rowland's offer and created a contractural relationship which could not be abrogated by Rowland's covert activities. While the payment of an award would be a legal obligation of the plaintiff, it in itself did not constitute the operative act of acceptance. See 7A Corbin, Contracts § 1489 (1962). In any event, we conclude that a valid contract was effected between the parties under which the plaintiff became the owner of the new method.

While the new bonding method was the primary element of the trade secret, it is clear that the apparatus which was developed by Tavelle played an important part in producing a roll which would be commercially acceptable to Xerox and other customers. The aggregate of these production techniques constituted the trade secret and was recognized as such by both Rowland and the plaintiff. The District Court's finding that the new apparatus developed by Tavelle lacked patentability was unwarranted since this was not an issue in the case and no evidence was presented on that point. Nor was such a finding necessary in the disposition of the case since, unlike a patent, novelty and invention are not requisite for a trade secret. Cataphote Corporation v. Hudson, 422 F.2d 1290 (5 Cir. 1970); Servo Corporation of America v. General Electric Company, 337 F.2d 716 (4 Cir. 1964).

Since we conclude that the plaintiff was the owner of the trade secret, the record in this case unquestionably discloses a pattern of conduct on the part of Rowland which warrants the equitable relief and protection sought by the plaintiff. Such protection of a trade secret focuses upon the inequitable use by another as the result of a breach of contract, abuse of confidence or other unconscionable means. See Cataphote Corporation v. Hudson, *supra*; also Restatement of Torts (1939) § 757. In addition to protective relief, Rowland should be required to assign his patent application to the plaintiff. See Colgate-Palmolive Company v. Carter Prod-

ucts, Inc., 230 F.2d 855, 865 (4 Cir. 1956).

Accordingly, the judgment of the District Court will be vacated and the case will be remanded for the entry of a decree consistent with this opinion.

■ Under the suggestion system of the plaintiff, Rowland is, of course, entitled to an award computed under the formula set forth in the suggestion booklet. Upon the remand, the District Court shall take evidence and grant Rowland a money judgment for the amount to which he is entitled.

Reversed and remanded.