**1ST AMERICAN SYSTEMS, INC.,**
Plaintiff and Appellant,

v.

**Brian J. REZATTO, Defendant
and Appellee.**

No. 13189.

Supreme Court of South Dakota.

Argued May 29, 1981.

Decided Oct. 14, 1981.

James A. Wyly of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for plaintiff and appellant.

Thomas P. Tonner of Maynes, Tonner, Maynes & Tobin, Aberdeen, for defendant and appellee.

MORGAN, Justice.

Plaintiff, 1st American Systems (appellant), appeals from a summary judgment and jury verdict for defendant, Brian Rezatto (appellee). Appellant prayed for injunctive relief and damages resulting from appellee's breach of contract and misuse of trade secrets. The trial court held that the contract was void as a restraint on trade and ordered summary judgment for appellee on that count. The action in tort, however, for misuse of trade secrets proceeded to trial. The jury found for appellee. Appellant raises numerous issues contesting the judgment and verdict which we treat severally.. We hold for appellant, reversing and remanding this case to the trial court for proceedings consistent with this opinion.

Appellant, a corporation, owns an agency, Insurance Counselors of Aberdeen, which employed appellee for almost seven years. During appellee's employment, he began as a salesman and later managed appellant's Aberdeen office. In June 1979, appellant terminated appellee.

The employment contract in force at the date of termination provided appellee with a salary and bonus for the sale of insurance contracts. In addition, it contained several post-employment restraints, as follow:

7. The Employee [appellee] acknowledges that as a result of his employment he will have and be given access to information as to renewal dates of insurance policies and to prospective customers which is usually and ordinarily kept confidential by the Company [appellant], and the Employee acknowledges that he understands that competition with the Company in the event of termination of this agreement would be unfair due to disclosures and confidences involved in the employment of this nature ... The Employee hereby agrees that in the event his employment with the Company is terminated ... that he shall not and will not for a period of ten (10) years following the date of the termination of his employment ... engage in the soliciting of general insurance business as follows:

(a) The Employee shall not canvass, solicit, or accept any business from any customer or customers who have been named in the books or records of the Company during the period of the Employee's employment.

. . . .

(c) The Employee shall not directly or indirectly in any way request or advise any customer or customers whose names are on the books and records of the Company during the period of the Employee's employment, to withdraw or cancel or divert his, or her or any of their business with the Company or then owner of such business.

. . . .

(e) The Employee further agrees that he will not reveal any information concerning any policy or policies of insurance, or the expiration dates thereof, to any person whomsoever, except to officers of the Company, and that he will not solicit renewals of any insurance that is for any person or organization other than the Employer. The Employee further agrees that upon the termination of his employment for any cause whatsoever, he will not directly or indirectly solicit the insurance customers of the Company, either verbally or in writing, nor will he keep in his possession a list of customers of the company nor contact the customers of the Company in any manner, not use the names and addresses of the customers of the Company for solicitation by him or his agents after the termination of his employment. . . .

(f) The Employee shall not canvass, solicit or accept any business from any person, partnership, corporation or other entity, whatsoever, who is listed or has been listed at any time during the Employee's employment with the Company, as a pros-

pect by any person, firm, partnership, corporation or other entity with which the Company has a franchise agreement or any exclusive listing agreement.

8. It is further agreed that in the event of termination of the Employee's employment, the Employee will not engage directly or indirectly, either personally or as an employee, associate, partner, manager, agent or otherwise, or by means of any corporation or other legal entity or devise, in the same business as that of the Company, or in any casualty, life, health and group insurance sales business or occupation, or in any way compete with the Company or the Company's successor, if any, within the City of Aberdeen, South Dakota, or within a radius of twenty-five (25) miles from the City of Aberdeen, South Dakota, for a period of ten (10) years from the date hereof, or from January 1 of each year hereafter (the renewal date of this agreement) whichever is later. The Employee further agrees that in consideration for the continued employment with the Company that this provision shall be deemed renewed as of the first day of January of each year hereafter for so long as he remains in the employ of the Company.

It is further agreed that this entire paragraph and all the subparagraphs thereof, shall be the proper subject for injunctive relief in addition to any other remedies available in equity or in law.

9. It is agreed that if any part, term, paragraph or provision of this agreement is by the courts or any tribunal held to be illegal, void or unenforceable, or to be in conflict with any law or the state of South Dakota, the validity of the remaining portions or provision shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if this agreement did not contain the particular part, term, paragraph or provision held to be invalid, illegal, void or unenforceable.

Appellee received an attorney's advice before signing this agreement.

While employed, appellee sold approximately ninety percent of the insurance at Insurance Counselors. Consequently, he had access to allegedly confidential customer data, including customer names and the type and amounts of insurance purchased by each, policy expiration dates, pricing data, premium amounts and the insurance company issuing the policy.

Although appellee offered to purchase Insurance Counselors, negotiations broke down. Subsequently, appellee was terminated. Shortly thereafter, he associated with Stellner-Rivett Agency, then, a few months later, opened Rezatto Agency. These agencies were both located in Aberdeen and directly competed with Insurance Counselors.

At the time of trial, appellee had 101 insurance customers, 49 of which were former customers of Insurance Counselors. The former customers supplied more than fifty percent of the total premiums generated by the Rezatto Agency. Although Insurance Counselors usually experienced a normal attrition rate of about ten percent, the rate increased to twenty-six percent after appellee began work elsewhere. Appellee admitted using customer data to solicit former customers of Insurance Counselors. Moreover, he admitted obtaining the data from the files of Insurance Counselors after his termination. Finally, appellant informed appellee and appellee admitted knowing that the information he used was deemed confidential by appellant.

First, we address whether the noncompetition clause, in paragraph 8 of the employment contract, is a restraint on trade void under SDCL 53–9–8. This statute voids contracts which generally restrain a profession, trade or business unless enumerated exceptions apply. One such exception provides,

An employee may agree with an employer . . . not to engage directly or indirectly in the same *business or profession* as that of his employer for any period not exceeding ten years from date of such agreement and within any specified territory not exceeding a radius of twenty-

five miles from the principal place of business of the employer, ... but such contracts between employee and employer shall apply only to those engaged in some *profession, the practitioners of which must be duly licensed in the state of South Dakota.*

SDCL 53–9–11 (emphasis added).

Since paragraph 8 of the contract in question parallels the statute's territorial and temporal terms, our only concern is construction of the last phrase of the statute. Although SDCL 53–9–11 uses the term "business or profession," the final proviso uses only the word "profession." Our inquiry focuses on whether the sale of insurance contracts is a profession as that term is used in SDCL 53–9–11. We hold that such an occupation is not a profession, since the legislature has not referred to insurance agents as professionals or their business as a profession.

The procedural history of SDCL 53–9–11 enlightens our construction of the statute. See *Oahe Conservancy Subdistrict v. Janklow*, 308 N.W.2d 559 (S.D.1981). The statute began as Senate Bill No. 17. When the South Dakota Senate passed this bill, it did not contain the proviso at issue here. The House specifically modified the Senate version by adding the proviso. Thereafter, the Senate confirmed the amendment. Based on this history, the maxim, *expressio unius est exclusio alterius*, the express mention of one thing is the exclusion of another, applies. *Bergh v. Stephens*, 175 So.2d 787, 790 (Fla.App.1965); *Odess 'v. Taylor*, 282 Ala. 389, 395, 211 So.2d 805, 811 (1968); Dickerson, The Interpretation and Application of Statutes, 234–235 (1975). Although application of this maxim creates only a negative implication that SDCL 53–9–11 applies to professions, not businesses and professions, our decision is also supported by rules of construction.

■ In dealing with statutory exceptions, this court construes the language strictly resolving doubt in favor of the general provision. *Lien v. Rowe*, 77 S.D. 422, 426, 92 N.W.2d 922, 924 (1958). Moreover, we construe the provision consistent with the overall purpose of the entire statute. *Western Surety Co. v. Mydland*, 85 S.D. 172, 173–4, 179 N.W.2d 3, 4 (1970). The general provision promotes competition by voiding contracts which generally restrain trade. Noncompetition clauses, like paragraph 8 of the instant agreement, constrain competition. By reading the proviso in a reasonably limited fashion, instead of in a broader manner, we construe the exception strictly and promote the purpose of the proscription against general restraints on trade. For this reason, we reject those decisions which broadly define profession as occupation, calling, location or employment. See *Betz v. Maier*, 12 Civ. 219, 33 S.W. 710 (Tex.App. 1896).

We also reject a reading of SDCL 53–9–11 which would negate the legislature's use of "profession" as a limitation. See *Board of Regents v. Carter*, 89 S.D. 40, 228 N.W.2d 621 (1975). We read the phrase, "the practitioners of which must be duly licensed in the state of South Dakota" as modifying and conditioning the use of the word "profession." Similarly, to read the statute as applicable to "profession" alone is to circumvent the licensing requirement. To bring any state licensed business within the purview of SDCL 53–9–11 is to avoid "profession" as an additional limitation.

■ We hold that SDCL 53–9–11 applies to legislatively designated professions which also require licensing pursuant to a state statute. Although insurance companies and their agents must obtain state licenses, SDCL 58–30–2.1, 58–6–1 et seq., the South Dakota Code makes a single, veiled reference to the sale of insurance contracts as a profession. SDCL 58–2–3. That reference is too attenuated to confer status as a profession on appellee's business. Although the trial court found that appellee was not engaging in a profession, it went too far in voiding the entire contract as a restraint on trade.

Appellant moved to limit the trial court's summary judgment ruling to the noncompetition clause in paragraph 8 of the employment contract. It wished to prosecute

a breach of contract action based on paragraph 7 of the contract. Basically, in this paragraph appellee agreed that certain information; e. g., renewal dates of insurance policies, and names and addresses of customers and prospective customers (expirations), was confidential. Annot., 88 A.L.R.3d 1142 (1978) (expirations defined). Additionally, he agreed to refrain from using expirations to solicit customers of Insurance Counselors. Appellee argued that paragraph 7 was nothing more than a species of the noncompetition covenant in paragraph 8. Apparently, the trial court agreed with appellee since it denied appellant's motion. We hold that the trial court erred because the contract was divisible and a nondisclosure agreement differs from a noncompetition agreement.

In paragraph 9, appellee and appellant agreed that each provision of their contract must stand or fall on its own merits regardless of the illegality of a different provision. Moreover, so long as an illegal covenant is divisible, the remaining legal covenants are enforceable. *Aladdin, Inc. v. Krasnoff*, 214 Ga. 519, 105 S.E.2d 730, 731 (1958); See, e. g., *Larson v. Hurd*, 75 S.D. 33, 58 N.W.2d 402 (1953); See also *Kohlman v. Cahill*, 301 N.W.2d 664, 667 (S.D.1981) (Fosheim, J., concurring). Finally, SDCL 53–9–8 provides that the contract is void only to the extent that it is a restraint of trade. Although a noncompetition agreement is a restraint on trade, the instant nondisclosure provision differs significantly.

The courts are split on whether nondisclosure clauses are void as restraints on trade. Annot., 3 A.L.R.2d 522 (1949). In *Mackie v. State Farm Mutual Auto. Ins. Company*, 13 Mich.App. 556, 600, 164 N.W.2d 777 (1968), the Michigan Court held that an employment contract containing a nondisclosure and noncompetition clause was void. It treated the two provisions as "variations on the same theme." Id., at 779. Although the instant facts resemble those in *Mackie*, the Michigan statute, declaring such contracts void, is substantively distinguishable from SDCL 53–9–8.

The Michigan statute prohibits "reasonable or unreasonable, partial or general, limited or unlimited," restraints on trade. Id., at 779. Our statute, however, prohibits contracts only *to the extent that* they restrain trade. SDCL 53–9–8. Unlike the Michigan statute, it does not contain the broad sweeping language which expressly prohibits a nondisclosure clause.

The California statute, however, is a verbatim copy of SDCL 53–9–8. *Loescher v. Policky*, 84 S.D. 477, 173 N.W.2d 50, 53 (1970). The California statute was construed in *State Farm Mutual Automobile Ins. Co. v. Dempster*, 174 Cal.App.2d 418, 344 P.2d 821 (1959), a case indistinguishable from the instant case, since it concerned the enforcement of a contract against the use of expirations by a former insurance salesman to solicit customers. There, the court noted that "prohibition of a contract forbidding one from engaging in business is not prohibition from solicitation of customers made known to him in confidence." Id., at 825. In affirming the trial court's issuance of a protective injunction, the California court also distinguished cases where the employee *accepts* business from a former employer's customers without post-employment solicitation by the employee. Id., at 826, citing *Morris v. Harris*, 127 Cal.App.2d 476, 478, 274 P.2d 22, 23 (1954).

The Oklahoma statute is similar to SDCL 53–9–8. *Loescher v. Policky*, 173 N.W.2d at 53. In *Tatum v. Colonial Life & Accident Ins. Co. of America*, 465 P.2d 448 (Okl.1970), that court affirmed an injunction issued on the basis of a nondisclosure provision in an insurance salesman's employment contract. It expressly distinguished noncompetition clauses from clauses, like paragraph 7 here. "[T]he contractual provision in the present case does not . . . restrain the defendant from exercising a lawful profession, trade or business of any kind whatsoever, either in competition with the plaintiff or otherwise." *Id.*, at 451. The nondisclosure clause was characterized as preventing unfair competition which occurs when the soliciting agent uses expirations of a former employer's insureds to

compete with the former employer. *Id.*, at 451. Similarly, under SDCL 53–9–8, an agreement not to disclose information or solicit, unlike a covenant not to compete, is free from challenge as a general restraint on trade. See 2 R. Callmann, The Law of Unfair Competition, Trademarks and Monopolies, 51.2(c) at 363 (3d ed. 1968); See, e. g., *Frederick Chusid & Co. v. Marshall Leeman & Co.*, 326 F.Supp. 1043, 1059–60 (S.D. N.Y.1971); *Sperry Rand Corporation v. Pentronix, Inc.*, 311 F.Supp. 910, 923 (E.D. Pa.1970); *Oxman v. Profitt*, 241 S.C. 28, 32, 126 S.E.2d 852, 854 (1962); *Gordon v. Wasserman*, 153 Cal.App.2d 328, 329, 314 P.2d 759, 761 (1957); Annot., 61 A.L.R.3d 397, 587 (1975). The trial court erred in completely voiding the instant contract since it is divisible and paragraph 7 is not a general restraint on trade.

■ Nondisclosure clauses support the public policy of fair competition by protecting confidential and secret information which stimulates research and development. 16G Business Organizations, Von Kalinowski, Antitrust Laws and Trade Regulation, § 59.02[2][c] at 59–19. On the other hand, to the extent that the law protects confidential information, that information possesses monopoly power. Id. Because this dialectic exists, covenants, like paragraph 7, are strictly construed and enforced only to the extent reasonably necessary to protect the employer's interest in confidential information. *United States v. Addyston Pipe & Steel Company*, 85 F. 271 (6th Cir. 1898) *aff'd* 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899); Murray, Murray on Contracts, § 336 at 709 (revised ed.); Comment, Partial Enforcement of Post Employment Restrictive Covenants, 15 Colum.J.L. & Soc.Prob. 181 (1979); See Restatement (Second) of Contracts, §§ 328, 330; *Hedberg v. State Farm Mutual Automobile Insurance Co.*, 350 F.2d

924, 931 (8th Cir. 1965). In addition, these covenants are not enforced if (1) a trade secret or confidential relationship does not exist, (2) the employer discloses the information to others not in a confidential relationship, or (3) it is legitimately discovered and openly used by others. *State Farm Mutual Ins. Co. v. Dempster*, 344 P.2d at 825–6; *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978); *California Intelligence Bureau v. Cunningham*, 83 Cal.App.2d 197, 188 P.2d 303, 306 (1948). 16G Business Organizations, Von Kalinowski, § 1.03[4][c][iii] at 1–64 (1981); Cf. Restatement (Second) of Agency, § 395 (breach of confidence while employed). Although the presence or absence of a contract, like the instant agreement, is important, Annot., 28 A.L.R.3d 7, 185–191 (1969), all in all, whether relief will be granted depends more on the above criteria than the presence of a covenant not to disclose trade secrets or solicit the employer's customers.* Restatement (Second) of Tort, Introduction of Division Nine, at 1–3; See, e. g., *Cataphote Corporation v. Hudson*, 422 F.2d 1290 (5th Cir. 1970) on remand 316 F.Supp. 1122 (S.D.Miss.1970) aff'd, 444 F.2d 1313 (5th Cir. 1971).

■ The nondisclosure provisions are contained throughout paragraph 7 of the employment contract. Appellee agreed not to reveal renewal dates, "any information concerning any policy or policies of insurance or expiration dates thereof," "customer lists," "names and addresses of customers" and information ordinarily kept confidential. These terms are enforced only to the extent that they involve trade secrets or a confidential relationship. *State Farm Mutual Ins. Co. v. Dempster*, 344 P.2d at 825; *Motorola, Inc. v. Fairchild Camera and Instrument Corp.*, 366 F.Supp. 1173, 1185

---

* "The contract only strengthens the right to relief.... [T]he question of the contract between the parties becomes immaterial, except that its consideration plainly evinces the intent of the parties, the one to protect itself against the doing. The other to abstain from doing the very things which the court finds that the defendant upon termination of his employment immediately proceeded to do." 2 R. Callmann,

Unfair Competition, Trademarks and Monopolies, § 51.2(c) at 362 (3d ed. 1968). Although this analysis appears to confuse contract and tort law, Unfair Competition and Trade Regulation has emerged as a separate body of law developed from tort, contract, and equity concepts. Restatement (Second) of Torts, Introduction to Division Nine, at 1–3.

n.3 (Ariz.1973); Cf. *Sears, Roebuck & Company v. Stiffel Company,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Servo Corporation of America v. General Electric Company,* 337 F.2d 716, 724–5 (4th Cir. 1964) cert. denied 383 U.S. 934, 86 S.Ct. 1061, 15 L.Ed.2d 851, reh. denied 384 U.S. at 914, 86 S.Ct. at 1333, 16 L.Ed.2d at 366. A trade secret is any commercially valuable device, machine, product, formula, pattern, compilation of information, etc., which gives the user a business advantage over competitors who lack the information. *Mid-America Mktg. v. Dakota Industries,* 281 N.W.2d 419, 423 (S.D.1979); 16G Business Organizations, Von Kalinowski, Antitrust Laws & Trade Regulations, § 59.02(2) at 59–9. Whatever the genus of the trade secret, it must be information not publicly known and protected from disclosure. Id., at 59–18.

In *Mid-America,* 281 N.W.2d at 423, we said that customer lists could become trade secrets. See, e. g., *Town and Country House & Homes Serv., Inc. v. Evans,* 150 Conn. 314, 189 A.2d 390 (1963). In *Jewel Tea Co. v. Grissom,* 66 S.D. 146, 279 N.W. 544 (1938), this court limited protection of customer lists to written lists since an employer does not possess a property right in the mental processes of the employee. *Central Plastics Company v. Goodson,* 537 P.2d 330, 334 (Okl.1975). Although these cases are instrumental in our decision, they are not dispositive. Unlike *Jewel Tea,* appellant claims a trade secret exists for expirations which, of course, include customer names and addresses but also encompass expiration dates, policy limits and customer need assessments. Although *Mid-America Marketing* discusses trade secrets in detail, there, we were concerned with a manufacturing process or a product. Here, we face a more difficult question, whether the information in an insurance agency's customer file is protected as a trade secret. See *State Farm Mutual Automobile Ins. Co. v. Dempster,* 344 P.2d at 827.

■ It is undisputed in the record that expirations are customarily considered confidential. The agreement between appellee and appellant makes these materials appellant's exclusive property. Moreover, appellee was put on notice by the employment contract that appellant considered the information secret and intended to seek remedial action to prevent a disclosure. See *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.,* 569 F.2d 286. Even if the contract protects information which is technically not a trade secret, it clearly reveals the intent of the parties to create a confidential relationship. A breach of this relationship is actionable even if Rezatto could glean some of the information from public sources. *Frederick Chusid & Co. v. Marshall Leeman & Co.,* 326 F.Supp. at 1059; *Mercer v. C. A. Roberts Co.,* 570 F.2d 1232, 1238 (5th Cir. 1978); *Central Plastics Co. v. Goodson,* 537 P.2d at 335 (requires breach of express contract or of some confidence); *Town and Country House & Homes Serv., Inc. v. Evans,* 189 A.2d at 394 (unless list available through business channels, or classified business or trade directories); See *Standard Brands, Inc. v. Zumpe,* 264 F.Supp. 254, 265 n. 15 (E.D.La.1967); *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.,* 569 F.2d at 289–90.

■ Almost fifty percent of appellee's current customers were former customers of Insurance Counselors. In selling these contracts, he relied on the entire file, not merely a customer list or the expiration dates. On at least two occasions he obtained access to files after his termination. It follows that the information was valuable and appellant was damaged by its unauthorized use. See *Gordon v. Landau,* 49 Cal.2d 690, 321 P.2d 456 (1958). Moreover, the files contain personal data on each customer obtained in a confidential business relationship. See *Masden v. Travelers' Ins. Co.,* 52 F.2d 75, 77 (8th Cir. 1931). They also contain expiration dates which are valuable in the highly competitive insurance business since policies are seldom cancelled during their term. *State Farm Mutual Automobile Ins. Co. v. Dempster,* 344 P.2d at 825.

Although, generally, a contract is not significant, the circumstances surrounding the instant agreement lend it greater impor-

tance. At the time appellee signed the contract, he had sold insurance for at least six years. He also consulted an attorney regarding this contract of employment. We hold that the expiration and renewal dates, personal customer data and customer names and addresses within appellant's files taken together and construed in light of the contract's express creation of confidentiality comprise a trade secret even though separately each item may not rise to that level. See *American Welding & Eng. Co. v. Luebke*, 37 Wis.2d 697, 155 N.W.2d 576 (1968); *Mercer v. C. A. Roberts Co.*, 570 F.2d at 1232 (no agreement and information generally known and not protected).

Although the covenants at issue here are subject to the rule of reason, a term of art in this area of the law, "most courts hold today that many covenants which violate the rule may be partially enforced." Comment, 15 Colum.J.L. & Soc.Prob. at 181. Indeed, South Dakota has "blue lined" similar covenants since 1969. Although *Loescher v. Policky*, 173 N.W.2d at 53, dealt with the sale of goodwill of a business, this court upheld an agreement even though its terms exceeded the maximum statutory time limit. In reaching its decision, this court relied on a Washington case which modified an employment agreement like the one before us today. Id., at 53–54; Annot., 61 A.L.R.3d 397, 386–492 (1975). Moreover, this court specifically stated that post-employment restrictions are closely related to a sale of a business' goodwill. Id., at 54.

The reasonableness of each provision is the benchmark for partial enforcement of the instant covenants. *Miller Mechanical, Inc. v. Ruth*, 300 So.2d 11, 12 (Fla.1974). "[A] covenant is reasonable only if it (1) is no greater than required for the protection of the employer, (2) does not impose undue hardship on the employee and (3) is not injurious to the public." Blake, Employees Agreement Not to Compete, 73 Harv.L.Rev. 625, 675, 681–84 (1960); See also Restatement (Second) of Contracts, § 330(1). This test is then applied to the duration, See Annot., 45 A.L.R.2d 77 (1966), area limitations, Annot., 43 A.L.R.2d 94 (1955), and

range of activities covered in the agreement. Annot., 61 A.L.R.3d 397, 486–492 (1975); Comment, 15 Colum.J.L. & Soc. Prob., at 189.

■ The nondisclosure covenant in paragraph 7 has a term of ten years. We can find no case which upholds such a duration as reasonable. The reasonableness of ten years raises a factual question for determination by the trial court on remand. *Raimande v. Van Vhrah*, 42 Ohio St.2d 21, 25, 325 N.E.2d 544, 547 (1975). Under similar circumstances, the criteria for a reasonable duration appears to be the time necessary to develop and establish personal relations with appellant's customers. *Fullerton Lumber Co. v. Torborg*, 270 Wis. 133, 70 N.W.2d 588, 592 (1955); See, e. g., *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368 (Iowa 1971). In *Ehlers* the Iowa Supreme Court held two years was reasonable. In *Fullerton Lumber Co.*, the Wisconsin Supreme Court upheld a minimum of three years. Similarly, on remand the trial court should set a reasonable duration based on the evidence. Appellant bears the burden of proof on this issue.

■ The covenant in paragraph 7 does not contain an area restriction. Instead, it attempts to prevent canvassing, soliciting or accepting business from past, present and prospective customers of appellant. It is overbroad, however, placing an undue burden on appellee and the public to the extent that paragraph 7(a) and (f) prohibit *accepting* appellant's customers' business, *Continental Car-Na-Var Corp. v. Mosely*, 24 Cal.2d 104, 148 P.2d at 13, and that paragraph 7(f) includes prospective customers. Id. We remand for determination of whether and to what extent appellee solicited persons who were appellant's customers at the time of appellee's termination. Appellant again bears the burden of proof on this issue.

As to the remainder of appellant's arguments, we find they are not meritorious or mooted by our decision. We reverse the

trial court's summary judgment and remand the instant case for consideration in light of this opinion. We hold that since insurance agents are not professionals for the purposes of SDCL 53–9–11, the trial court properly voided the instant noncompetition clause as a restraint on trade proscribed by SDCL 53–9–8, but that in also voiding the nondisclosure provisions the trial court erred because these provisions are not within SDCL 53–9–8's proscription to the extent specified in this opinion. We reverse the trial court's summary judgment and remand for trial on the issues of liability and relief for breach of contract.

All the Justices concur.