KAHN, Appellant,

v.

CVS PHARMACY, INC., et al., Appellees.

[Cite as *Kahn v. CVS Pharmacy, Inc.,* 165 Ohio App.3d 420, 2006-Ohio-112.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–040669 and C–050048.

Decided Jan. 13, 2006.

Furnier & Flagel, L.L.C., Robert R. Furnier, and Judi L. Sobecki, for appellant.

Freund, Freeze & Arnold, Jennifer Kirkpatrick–Nordstrom, and Christopher W. Carrigg, for appellees.

SUNDERMANN, Judge.

{¶ 1} Marla Kahn appeals the trial court's judgment that directed a verdict in favor of CVS Pharmacy, Inc. ("CVS") on the issue of future and permanent damages and that granted summary judgment in favor of CVS with respect to her loss-of-consortium claim and punitive-damages claim. We conclude that the trial properly granted a directed verdict on future and permanent damages and affirm the judgment with respect to that issue. But because we conclude that the trial court erred in granting summary judgment with respect to Kahn's loss-of-consortium and punitive-damages claims, we reverse the judgment of the court in part and remand this cause for further proceedings on those claims.

## Factual Background

{¶ 2} Kahn is the adoptive mother of Rose and Sara Kahn. As a result of their difficult early years before they were adopted, both girls, who are half-sisters, suffered from various psychiatric problems. Kahn sought treatment for the girls to address the problems. Dr. Joseph Cresci prescribed Clonidine for both girls. According to Dr. Cresci, his hope was that Clonidine would curb Rose's aggressive behavior and Sara's impulsivity. The drug treatment, along with other therapy, was generally successful.

{¶ 3} In January 1999, when Rose and Sara were six and four years old respectively, Kahn called a CVS store to refill the girls' Clonidine prescriptions. On Tuesday, January 12, she picked up the drug and returned to her home. While at home, Kahn realized that the new pills were larger than the pills that remained from the last refills and that the pills had a different shape. According to Kahn, she called CVS to confirm that she had received the correct drug. An unidentified person answered the telephone and allegedly told Kahn that "[she was] prescribed Clonidine and that's what was filled." Assured by the telephone call, Kahn gave the pills to the girls. The girls took the new pills for three or four days.

{¶ 4} After the girls had taken the new pills, Kahn observed physical changes in the girls. They had dry, cracked lips, trouble urinating, and decreased appetites. The girls' behavior also changed. According to Kahn, Rose and Sara were more irritable and hyperactive.

{¶ 5} Approximately four days after the prescription had been filled, Kahn went in the girls' room in the morning and found that the room was unusually messy and that both girls were naked. Later that day, Sara disclosed to Kahn that Rose had inserted the handle of a pompom into her vagina. Rose confirmed Sara's story.

{¶ 6} Kahn returned to the CVS store with the pills and asked the pharmacist to confirm that the pills were Clonidine. The pharmacist determined that the pills were not Clonidine but rather Cogentin, a drug used to treat symptoms of Parkinson's disease. CVS acknowledged that the prescription had been misfilled.

{¶ 7} In the weeks and months following the misfill, Kahn alleged, the behavior of the girls deteriorated. Both girls were more aggressive. Kahn and other witnesses testified that the girls were no longer friendly with each other and that Sara began to exhibit sexualized behavior.

{¶ 8} Kahn filed a lawsuit against CVS, Robert Husman, the pharmacist who had filled the prescription, and unnamed defendants.[1] Upon the motion of CVS, the trial court granted summary judgment on Kahn's loss-of-consortium and punitive-damages claims. The remaining claims were tried before a jury. At the close of Kahn's case, the trial court directed a verdict in favor of CVS on the issue of future and permanent damages. On the other claims, the jury returned a verdict for Kahn and awarded damages of $25,000 for each girl.

## Loss of Consortium

{¶ 9} Because they involve pretrial motions, we consider the second and third assignments of error first. In the second assignment of error, Kahn asserts that the trial court erred in granting summary judgment in favor of CVS on her loss-of-consortium claim.

{¶ 10} Kahn's complaint included a claim for medical, hospital, and pharmaceutical expenses and for loss of consortium with Rose and Sara. CVS filed a motion for partial summary judgment in which it argued that Kahn's individual claims were barred by a two-year statute of limitations because the complaint was filed two and a half years after the prescription was misfilled. Kahn argued that CVS should have been estopped from arguing that her claims were barred by the statute of limitations, because she had relied on CVS's assurances that the statute of limitations would not expire while she attempted to settle with CVS. The trial court agreed with CVS and ruled that the claims were barred by the statute of limitations.

{¶ 11} On appeal, Kahn now claims that the trial court erred in concluding that a two-year statute of limitations applied to her loss-of-consortium claim. Instead, Kahn argues, R.C. 2305.09 provides a four-year statute of limitations for consortium claims. CVS counters that the trial court granted summary judgment only on Kahn's individual claims and that it did not address her consortium claim.

---

1. Kahn later dismissed Husman from the lawsuit.

{¶ 12} Summary judgment is properly granted when there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.[2] This court reviews the granting of summary judgment de novo.[3]

{¶ 13} The statute of limitations for a loss-of-consortium claim is four years.[4] We are not persuaded that the trial court did not rule on Kahn's loss-of-consortium claim. The parties' motions and replies, as well as the trial court's decision, refer to Kahn's claims without specifying any of them. It is clear that her claims included a claim for loss of consortium of Rose and Sara. The trial court erred in concluding that a two-year statute of limitations applied to Kahn's claim for loss of consortium.

{¶ 14} CVS argues that even if the trial court's entry of summary judgment included the loss-of-consortium claim, Kahn has waived the issue on appeal because she did not raise the error before the trial court. We note that Kahn filed a motion for certification under Civ.R. 54(B). The trial court denied the motion. Once the court had ruled on the motion for summary judgment, Kahn was under no obligation to again raise the issue with the trial court in order to preserve it for appeal. Kahn's second assignment of error is well taken.

## Punitive Damages

{¶ 15} Kahn's third assignment of error is that the trial court erred in granting summary judgment in favor of CVS on her claim for punitive damages. We conclude that this assignment of error is also well taken.

{¶ 16} Kahn sought punitive damages based on CVS's failure to investigate and to ensure that she had received the correct prescription. In order to succeed on her claim for punitive damages, Kahn had to demonstrate that CVS acted with actual malice.[5] Actual malice is demonstrated either by "behavior characterized by hatred, ill will, or a spirit of revenge * * * [or] by * * * extremely reckless behavior revealing a conscious disregard for a great and obvious harm."[6] Here, Kahn argues that CVS and its employees acted with

2. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

3. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

4. R.C. 2305.09.

5. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174.

6. Id.

conscious disregard. To survive a summary-judgment challenge on punitive damages based on conscious disregard, Kahn had to show that "reasonable minds [could] differ as to whether [CVS] was aware [its] act had a great probability of causing substantial harm," and that reasonable minds could differ as to whether "[CVS] consciously disregarded [Rose and Sara Kahn's] rights or safety." [7]

{¶ 17} In support of her claim for punitive damages, Kahn offered the affidavit of Dr. Albert Patterson, Director of Pharmacy at Children's Hospital in Boston, and the deposition of Jennifer Rudell, a pharmacy supervisor for CVS. In his affidavit, Dr. Patterson stated, "Mr. Husman had to know that the children could suffer from not only the Clonidine withdrawal but also the ingestion of an unknown medication that could be * * * extremely dangerous to them." In his affidavit, Dr. Patterson also listed the results that could follow from a withdrawal of Clonidine, including hyperactive and agitated behavior, and irrepressible sexualized behavior.

{¶ 18} In her deposition, Rudell stated that if a pharmacy employee received a call from a customer who thought that she had received the wrong medication, the employee should have immediately given the phone to the pharmacist. According to Ruddell, a reasonable pharmacist should have asked for a description of the pills and should have compared the description with the pills that were to be prescribed. If there was a discrepancy, Ruddell stated, the pharmacist should have asked the customer to bring the pills in for further investigation.

{¶ 19} CVS disputed whether Kahn had called the pharmacy to report her misgivings about the pills that she had received. But that was a factual issue best resolved by a jury. Viewing the evidence in the light most favorable to Kahn, we conclude that reasonable minds could come to different conclusions about whether CVS was aware that its actions had a great probability of causing substantial harm to Rose and Sara, and about whether CVS consciously disregarded the girls' safety. The third assignment of error is well taken.

## Permanent and Future Damages

{¶ 20} In her remaining assignment of error, Kahn claims that the trial court erred in directing a verdict in favor of CVS on the issue of permanent and future damages. A trial court shall direct a verdict for a moving party when "after construing the evidence most strongly in favor of the party against whom the motion is directed, [the court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." [8]

---

7. Id. at 336, 512 N.E.2d 1174.

8. Civ.R. 50(A)(4).

{¶ 21} Kahn acknowledges that if the girls' injuries were subjective in nature, she was required to present expert evidence of future and permanent damages in order to prevent speculation on the part of the jury.[9] Conversely, expert evidence was not required for objective injuries.[10] Kahn argues that the injuries to the girls were objective in nature, and that the jury should have been permitted to draw its own conclusions about future and permanent damages resulting from the injuries.

■ {¶ 22} "[A]n injury is 'objective' when, without more, it will provide an evidentiary basis for a jury to conclude with reasonable certainty that future damages, such as medical expenses will probably result."[11] Here, no evidence was offered regarding permanent physical injuries to the girls. Rather, the injuries claimed were psychological, resulting in an increase in aggressive and sexualized behavior, hyperactivity, and animosity between the girls. We conclude that the alleged injuries were subjective in nature and that expert evidence was required in order to establish the injuries and the probability of future damages.

{¶ 23} Dr. Cresci and Dr. Maria Krocker treated the girls and testified at trial. Cresci stated that, in his opinion, Sara's long-term prognosis was "very, very bad." But he did not state whether this prognosis was the result of the misfilled prescription or the result of Sara's early development. He offered no opinion about Rose's prognosis.

{¶ 24} Dr. Krocker was asked what effect the incident with the pompom would have on the girls. She stated that their behavior, which included temper tantrums and hostility toward each other, might have been exacerbated. Dr. Krocker further testified that "Sara might turn into a victim, or she might provoke Rose to further attacks upon herself, and Rose might continue to be [the] aggressor."

■ {¶ 25} "[T]he damages that result from an alleged wrong must be shown with reasonable certainty, and cannot be based upon mere speculation or conjecture * * *."[12] Neither expert testified with reasonable certainty about the probability of future damages that the girls might face due to the misfilled prescription. Because Kahn did not present expert testimony about the girls'

---

9. *Day v. Gulley* (1963), 175 Ohio St. 83, 86, 23 O.O.2d 382, 191 N.E.2d 732.

10. Id.

11. *Powell v. Montgomery* (1971), 27 Ohio App.2d 112, 119, 56 O.O.2d 279, 272 N.E.2d 906.

12. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 17, 19 OBR 71, 482 N.E.2d 955.

future and permanent damages, the trial court properly directed a verdict in favor of CVS on these claims. The assignment of error is overruled.

## Conclusion

{¶ 26} We affirm the trial court's judgment with respect to the directed verdict entered in favor of CVS on the issue of future and permanent damages. But we conclude that the trial court erred in granting summary judgment to CVS with respect to Kahn's loss-of-consortium claim and punitive-damages claim. We therefore reverse the judgment of the trial court in part and remand the cause to the trial court for further proceedings in accordance with the law.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HILDEBRANDT, P.J., and GORMAN, J., concur.