#25393-a-DG

**2010 SD 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RAVEN INDUSTRIES, INC.,                          Plaintiff and Appellee,

     v.

CLARK LEE and INTEGRA
PLASTICS, INC.,                              Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN K. CALDWELL
Judge

* * * *

THOMAS J. WELK
JASON R. SUTTON of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota          Attorneys for plaintiff
                                            and appellee.

LEE A. MAGNUSON
AMY L. ARNDT
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz & Lebrun, PC
Sioux Falls, South Dakota          Attorneys for defendants
                                            and appellants.

* * * *

CONSIDERED ON BRIEFS
ON MAY 24, 2010

OPINION FILED **06/16/10**

#25393

GILBERTSON, Chief Justice

[¶1.]      Raven Industries (Raven) sued Integra Plastics, Inc. (Integra), a business competitor, and Clark Lee (Lee), a former employee of Raven, by complaint for injunctive relief, tortious interference with contract, and unfair competition. Raven alleged that Lee unfairly competed with Raven by using alleged secret, confidential, or proprietary information that he was contractually obligated not to disclose.  Raven's complaint sought only injunctive relief.  A bench trial was held and the circuit court entered findings of fact, conclusions of law, and a permanent injunction in Raven's favor.  Integra and Lee appeal.

**FACTS**

[¶2.]       Raven is a string-reinforced plastic film manufacturer in Sioux Falls, South Dakota.  Integra is a manufacturing company in Madison, South Dakota. Lee was an engineer at Raven from 1991 until February 2006 when he was fired. In 1991, Lee signed an "Agreement for Execution by Employees of Raven Industries, Inc. Relating to Inventions, Secret Processes, Trademarks, Trade Names, Character Names and Other Similar Matters" (Proprietary Rights Agreement).[1]  After being

---

1.     The Proprietary Rights Agreement Lee signed stated:

> Employee shall not directly or indirectly disclose or use at any time, either during or subsequent to the said employment, any secret or confidential information, knowledge, or data of Employer (whether or not obtained, acquired or developed by Employee) unless he shall first secure the written consent of Employer.  Upon termination of his employment Employee shall turn over to Employer all notes, memoranda, notebooks, drawings or other documents made, compiled by or delivered to him concerning any product, apparatus or process manufactured, used or developed or investigated by Employer during the period of his employment; it being agreed that the same and all

(continued . . .)

-1-

fired, Lee signed a "Severance Package/Agreement" (Severance Agreement). The Proprietary Rights Agreement and Severance Agreement will now collectively be referred to as the "non-disclosure agreements." In the Severance Agreement, Lee agreed not to "[u]se or disclose to any third party any confidential or proprietary Company information or any confidential or proprietary knowledge about the Company obtained by [Lee] during the course of [Lee's] employment, including without limitation the terms and conditions of this Agreement." Lee commenced employment with Integra in February 2006 after he was fired by Raven.

[¶3.] At Raven, Lee was on the engineering team that originally built Raven's string-reinforced plastic line (Line) in 1993.[2] Lee was initially responsible for operating the Line and modifying it to improve product quality. Raven experienced many problems with the Line after production began. Lee, as the lead engineer, worked to develop solutions to these problems. As a result, Lee was intimately familiar with the assembly and operation of Raven's Line. In sum, it took over thirteen years to perfect Raven's Line.

[¶4.] At Integra, Lee was the director of business development and worked to develop a manufacturing line to produce string-reinforced plastic film almost

---

(. . . continued)

       information contained therein are at all times the property of the Employer.

2.    The Line is comprised of several integrated pieces of equipment that perform a process that produces string-reinforced plastic film. Specific details about the Line and the product it produces are not relevant to this appeal. Therefore, the specific details will not be disclosed or discussed because of the sensitive nature of this information.

identical to Raven's. Although Integra considered building a production line for this product before Lee was hired, it did not. Once Integra employed Lee, Lee contacted an equipment manufacturer that built a component of Raven's Line to have the same modified component made for Integra. The modifications Lee requested were unique to Raven's Line and were not used by any other manufacturer in the industry. Within one month of receiving the necessary equipment, Integra was able to produce a product that was commercially comparable to Raven's.

[¶5.] Raven filed suit against Integra and Lee for injunctive relief, tortious interference with contract, and unfair competition. Raven alleged that Integra and Lee unfairly competed against Raven by using secret, confidential, or proprietary information – that Lee was contractually obligated not to disclose – to produce a product for Integra commercially comparable to Raven's. Raven's complaint sought only injunctive relief. A nine-day bench trial was held, and the circuit court found for Raven on all three claims. The circuit court subsequently entered findings of fact, conclusions of law, and a permanent injunction prohibiting Integra from operating its line for two years.

[¶6.] Integra and Lee appeal, raising the following issues:[3]

---

3. Raven argues "an issue exists about whether th[is] Court has jurisdiction to hear the appeal because [Integra] fail[ed] to appeal [a] modified permanent injunction" that was entered after the circuit court entered the original permanent injunction enjoining Integra's operation of its line. Raven asserts that even if this Court reverses the original permanent injunction, the modified permanent injunction will remain as a final judgment. On this basis, Raven contends that this appeal is moot. However, after a thorough review of the record, Raven, Integra, and Lee were aware that the appeal from the original permanent injunction included the related modified permanent injunction. *See* SEC v. Van Waeyenberghe, 990 F2d 845, 847 n3

(continued . . .)

1. Whether the circuit court erred in concluding that the Uniform Trade Secrets Act did not preempt Raven's tort claims.

2. Whether the circuit court erred in concluding that Raven and Lee's non-disclosure agreements were enforceable.

3. Whether the circuit court erred in concluding that Integra engaged in unfair competition.

4. Whether the circuit court erred in granting the permanent injunction.

## ANALYSIS AND DECISION

[¶7.] **1. Whether the circuit court erred in concluding that the Uniform Trade Secrets Act did not preempt Raven's tort claims.**[4]

---

(. . . continued)

(5thCir 1993) (citations omitted) (holding that court had jurisdiction even though SEC filed notice of appeal from a modified order, but not the original order, because "notices of appeal are liberally construed where 'the intent to appeal an *unmentioned* or mislabeled ruling is apparent and there is no prejudice to the adverse party'" and where "claims or issues are inextricably entwined"); Walker v. Los Angeles County Metro. Transp. Auth., 104 P3d 844, 847 (Cal 2005) (quoting Vibert v. Berger, 410 P2d 390, 392 (Cal 1966) (citing Cal. Rules of Court, Rule 1)) (recognizing and applying maxim that "notice of appeal must be liberally construed in favor of its sufficiency"). Raven had sufficient notice of the issues appealed and was able to submit a brief in response. Therefore, Raven's contention that this Court lacks jurisdiction is rejected.

4. Raven argues Integra and Lee failed to preserve this issue for appeal because they did not raise it to the circuit court after their motion for summary judgment was denied. Raven suggests that "[b]y failing to raise preemption after the summary judgment hearing, [Integra and Lee] did not provide the [c]ircuit [c]ourt the opportunity to correct any mistake made in denying summary judgment[.]" No prior South Dakota case has addressed this issue directly. Turning to other jurisdictions, it appears that after a circuit court denies a motion for summary judgment, there is no need to raise the same issue at trial to preserve it for appeal. *See* Kahn v. CVS Pharmacy, Inc., 846 NE2d 904, 907-08 (OhioCtApp 2006) ("Once the court had ruled on the motion for summary judgment, [the plaintiff] was under no obligation to again raise the issue with the trial court in order to preserve it for appeal."); Carrico v. Kondos, 111 SW3d 582, 585 (TexCtApp 2003) (citing Cincinnati

(continued . . .)

[¶8.] Integra and Lee initially argued that the circuit court erred in concluding that the Uniform Trade Secrets Act (UTSA) did not preempt Raven's claims for injunctive relief,[5] tortious interference with contract, and unfair competition. Integra and Lee concede in their reply brief, however, that a breach of contract claim would not be preempted by the UTSA. *See* SDCL 37-29-7(b)(1) (specifically excluding from the UTSA "contractual remedies, whether or not based upon misappropriation of a trade secret"). Integra and Lee instead maintain that the non-disclosure agreements (or contracts) entered into by Lee were unenforceable. Integra and Lee therefore argue that the allegedly invalid and unenforceable non-disclosure agreements could neither support a contract claim nor provide a contractual basis to support the tortious interference with contract claim. As Integra and Lee have presented this issue, their appeal hinges on whether

_____

(. . . continued)

    Life Ins. Co. v. Cates, 927 SW2d 623, 626 (Tex 1996)) ("To preserve [the issues for appeal], the party must raise them in the summary judgment proceeding and present them in an issue or cross-point on appeal."); Normandeau v. Hanson Equip., Inc., 215 P3d 152, 159 (Utah 2009) ("[R]aising a legal issue during a summary judgment motion based on the undisputed facts properly provides the court with an opportunity to rule on the issue" and the court "will not require parties to reraise the same issue in order to preserve it for appeal."). *Cf.* SDCL 19-9-3 ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Therefore, this issue was preserved for appeal.

5.     Raven asserts in its brief that "[a]lthough labeled as 'injunctive relief,' the allegations in Count I sound in breach of contract."

Integra and Lee can demonstrate that the circuit court erred in ruling that the non-disclosure agreements were enforceable. This issue is addressed below.[6]

[¶9.]    **2.    Whether the circuit court erred in concluding that Raven and Lee's non-disclosure agreements were enforceable.**

[¶10.]    Integra and Lee argue the circuit court erred in holding that Raven and Lee's non-disclosure agreements were valid and enforceable. As noted above, if the non-disclosure agreements are unenforceable, Raven's tortious interference with contract claim must also fail because that claim was premised on a valid and enforceable contract.

[¶11.]    Non-disclosure agreements are unenforceable if: "(1) a trade secret or confidential relationship does not exist; (2) the employer discloses the information to others not in a confidential relationship; or, (3) it is legitimately discovered and openly used by others." 1st Am. Sys., Inc. v. Rezatto, 311 NW2d 51, 57 (SD 1981). Integra and Lee argue the non-disclosure agreements in this case were

---

6.    If the contract claim survives, the tortious interference with contract claim must also survive. Although a separate cause of action, this tort is a protection of contractual rights, which this Court has long recognized. *See* Hayes v. N. Hills Gen. Hosp., 1999 SD 28, ¶17, 590 NW2d 243, 248 (citing Commc'n Tech. Sys., Inc. v. Densmore, 1998 SD 87, 583 NW2d 125; Landstrom v. Shaver, 1997 SD 25, ¶73, 561 NW2d 1, 16; Tibke v. McDougall, 479 NW2d 898 (SD 1992)); Case v. Murdock, 1999 SD 22, ¶11, 589 NW2d 917, 919. Furthermore, in this case, Raven's tortious interference with contract claim was not based on the misappropriation of a trade secret, but rather the breach of the non-disclosure agreements. As a result, Raven's tortious interference claim was not preempted by the UTSA. *See* IDX Sys. Corp. v. Epic Sys. Corp., 285 F3d 581, 586-87 (7thCir 2002) ("'The tort of inducing breach of a non-disclosure contract (the sort of contract independently protected by [a statute similar to SDCL 37-29-7(b)(1)])' 'is not based upon misappropriation of a trade secret.' 'It is based on interference with the contract.'").

unenforceable because "Lee was not informed about what information Raven considered secret, confidential, or proprietary"; "Raven disclosed the alleged secret, confidential, [or] proprietary information to others not in a confidential relationship"; and, the "alleged secret, confidential, [or] proprietary information was legitimately discovered and openly used by others."

*Confidential Relationship*

[¶12.] Integra and Lee contend that while "Raven and Lee may have been in a confidential relationship as employer and employee, Raven's claimed secret process does not constitute a trade secret[.]" The first requirement in assessing whether a non-disclosure agreement is enforceable is whether a trade secret *or* confidential relationship exists. *Id.* In this case, the circuit court found that Raven and Lee had a confidential relationship. *See* Walling Chemical Co. v. Bigner, 349 NW2d 647, 650 (SD 1984) (recognizing that an employer-employee relationship was a confidential relationship). Integra does not assert that this finding was clearly erroneous. Instead, Integra and Lee argue that because Lee was never informed about what information Raven considered secret, confidential, or proprietary, "Lee could not have known that he was violating the non-disclosure agreements." Integra and Lee argue that the circuit court erred by ignoring this fact in its findings of fact and conclusions of law. Raven, however, was not required to inform Lee of this information under *Rezatto*. 311 NW2d at 57. Furthermore, the circuit court was free to disregard testimony it found to lack credibility. *See* Osman v. Karlen & Assocs., 2008 SD 16, ¶30, 746 NW2d 437, 446. Therefore, the circuit court did not err in determining that the first *Rezatto* factor was not satisfied.

*Disclosure of Information*

[¶13.]      Integra and Lee next argue that the circuit court erred in concluding that Raven did not disclose secret, confidential, or proprietary information to others not in a confidential relationship. Integra and Lee cite *Rezatto* for the proposition that the test for whether secret, confidential, or proprietary information was disclosed, which would render the non-disclosure agreements unenforceable, requires determining if this information was disclosed to others "at all." *See* 311 NW2d at 57. Integra and Lee point out that Raven often had people, other than those in a confidential relationship with Raven, observe the process that Raven asserts was secret, confidential, or proprietary. These instances, among many others, included Raven permitting one of its competitors to tour its facilities, allowing consultants who were not required to sign confidentiality agreements to observe the Line, and not requiring contractors who assisted in the Line's installation to sign confidentiality agreements.

[¶14.]      In response, Raven argues *Rezatto* does not stand for the proposition that *any* dissemination of information invalidates a non-disclosure agreement. Raven asserts that only reasonable efforts to maintain secrecy are required. *See* Centrol, Inc. v. Morrow, 489 NW2d 890 (SD 1992). In *Morrow*, this Court, relying on *Rezatto*, concluded that general dissemination would invalidate trade secret protections, but that dissemination of confidential or proprietary information to other members of a cooperative would not. *See id.* Moreover, *Morrow* stated that the *Rezatto* decision was "consistent with the [UTSA]." *Id.* at 894-95. Under the UTSA, absolute secrecy, as advanced by Integra and Lee, is not required. The

UTSA only requires reasonable efforts to keep secret, confidential, or proprietary information from general dissemination. SDCL 37-29-1(4)(ii).

[¶15.]     Here, the circuit court found that Raven "engaged in reasonable efforts to maintain the secrecy of its process for manufacturing string-reinforced plastic film" and that "Raven did not disclose its process for manufacturing string-reinforced plastic to persons outside a confidential relationship." These findings were based on extensive testimony given at trial that Raven had policies that protected its Line from anyone not in a confidential relationship with Raven. Because the circuit court's findings were supported by the record, they are not clearly erroneous. Therefore, the circuit court did not err in determining that the second *Rezatto* factor was not satisfied.

*Legitimately Discovered and Openly Used*

[¶16.]     Integra and Lee finally contend that the circuit court erred in concluding that Raven's Line was not legitimately discovered and openly used by others in the industry. The circuit court concluded that "Raven developed a unique process for manufacturing string-reinforced plastic film that has only been replicated by Integra with the assistance of Lee." Integra and Lee take issue with this conclusion, asserting that "the circuit court ignored [ ] evidence to the contrary." However, testimony at trial established that Raven's Line was so unique that no other manufacturer, other than Integra with Lee's assistance, could replicate it. Lee had even told his manager at Raven that the Line could not be replicated without his knowledge. Therefore, the record supports the circuit court's conclusion that Raven's Line had not been legitimately discovered and openly used

by others. Whether the circuit court "ignored" Integra and Lee's "evidence to the contrary" is not reversible error, as such determinations are left to the sound discretion of the circuit court. *See Osman*, 2008 SD 16, ¶30, 746 NW2d at 446.

[¶17.] Integra and Lee have failed to satisfy any of the *Rezatto* factors. As a result, Integra and Lee have failed to demonstrate that the circuit court erred in ruling that the non-disclosure agreements were enforceable. Thus, Raven's contract claim based on these enforceable non-disclosure agreements survives, as well as the circuit court's grant of injunctive relief as a remedy.

[¶18.] **3. Whether the circuit court erred in concluding that Integra engaged in unfair competition.**

[¶19.] Integra and Lee argue that the circuit court's conclusion that Integra engaged in unfair competition "was unfair" and "erroneous." The circuit court found that Raven proved each element for tortious interference with contract. The circuit court then concluded that Integra's tortious interference also constituted unfair competition. This conclusion was premised on Integra receiving a thirteen-year head start in manufacturing string-reinforced plastic film after it induced Lee to disclose Raven's secret, confidential, or proprietary information.

[¶20.] The crux of Integra and Lee's argument is that Raven's unfair competition claim should have been rejected by the circuit court because Lee did not have a non-competition agreement with Raven. Thus, Integra and Lee conclude that not allowing Lee to work for Integra was anti-competitive. However, in *Rezatto*, this Court recognized that non-disclosure agreements are not anti-competitive. 311 NW2d at 57 (citing 2 R. Callmann, *The Law of Unfair Competition*, Trademarks and Monopolies, 51.2(c) at 363 (3d ed. 1968) (additional

citations omitted)) ("[a]n agreement not to disclose information or solicit, unlike a covenant not to compete, is free from challenge as a general restraint on trade"). Furthermore, as Raven points out, Lee was not restricted by his non-disclosure agreements from working at Integra; instead, Lee was only prohibited from using Raven's secret, confidential, or proprietary information while working at Integra. This distinction was properly recognized by the circuit court, was not unfair or erroneous, and does not require reversal.

[¶21.]     **4.     Whether the circuit court erred in granting the permanent injunction.**

[¶22.]     Integra and Lee contend that the circuit court erred in "granting an overly broad injunction that was not specifically tailored to redress the harm alleged." The circuit court granted Raven an injunction that prohibited Integra and Lee from "operating Integra's [line], or any portion thereof, for a period of two years" and from "working on any project containing [a component of the Line] to manufacture string-reinforced plastic film for two years." This Court reviews a circuit court's decision to grant a permanent injunction under the abuse of discretion standard. Halls v. White, 2006 SD 47, ¶4, 715 NW2d 577, 579 (citation omitted) (stating that such a decision is left to the "sound discretion of the [circuit] court").

[¶23.]     Permanent injunctions are authorized by SDCL 21-8-14, which provides:

> Except where otherwise provided by this chapter, a permanent injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:

> (1) Where pecuniary compensation would not afford adequate relief;
> (2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;
> (3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or
> (4) Where the obligation arises from a trust.

Four additional factors are considered in determining whether to award injunctive relief. These factors include: (1) whether the party to be enjoined caused the harm; (2) whether irreparable harm would be suffered if the injunction were not granted; (3) whether the party to be enjoined acted in bad faith or if the injury-causing behavior was an innocent mistake; and, (4) in balancing the equities, whether the hardship to be suffered by the enjoined party would be disproportionate to the benefit to be gained by the injured party. Prairie Hills Water and Dev. Co. v. Gross, 2002 SD 133, ¶¶36-37, 653 NW2d 745, 753-54 (citations omitted).

[¶24.] The circuit court considered these factors and concluded that each had been met. The circuit court determined that: "Both Lee and Integra have caused and continue to cause harm to Raven by using Raven's secret, confidential, or proprietary information"; Raven has experienced and will continue to experience irreparable harm as long as Lee and Integra use Raven's secret, confidential, or proprietary information; Integra and Lee's use of Raven's secret, confidential, or proprietary information was not an innocent mistake; and, "the harm experienced by Lee and Integra if the permanent injunction [was] issued [wa]s not disproportionate to the harm incurred by Raven without the injunction." Thus, the circuit court concluded that "it [wa]s appropriate to exercise its discretion and enter a permanent injunction in favor of Raven." While Integra and Lee may disagree

with the circuit court's findings and conclusions on this issue, on this record, they cannot demonstrate that the issuance of the injunction was an abuse of discretion.[7]

[¶25.]     The circuit court is affirmed.

[¶26.]     KONENKAMP, ZINTER, and SEVERSON, Justices and WILBUR, Circuit Court Judge, concur.

[¶27.]     WILBUR, Circuit Court Judge, sitting for MEIERHENRY, Justice, disqualified.

---

7.     Integra and Lee's assertion that the injunction was overly broad rings hollow. Raven requested an injunction that was indefinite in duration, one which would last until another competitor discovered the specific process it used in its Line. The circuit court exercised its discretion, however, and issued an injunction that was for a period of two years, which was the amount of time Integra's president testified would have been required to build its line without Lee. The circuit court's decision demonstrates that it tailored the injunction to the evidence and testimony presented at trial.